*1534*
*cct # 4*
*Summs Iss*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA (PITTSBURGH)

)  Craig Cunningham
)  Plaintiff. Pro-se
)
)        v.                                    CIVIL ACTION NO.
)
)  North Versailles Township
)  Vincent Dicenzo, Thomas Nee
)  James Comunale, John Doe 1, and
)  Scottsdale Insurance Company
)  Defendants.

# 09.1314

2009 SEP 28 AM 11:50
CLERK
U S DISTRICT COURT
**FILED**

**Plaintiff's Original Complaint**

1.  The Plaintiff in this case is Craig Cunningham, a natural person and resident of
    Dallas County, with a mailing address of PO box 820022, Dallas, Tx 75231. The
    Plaintiff was at the time of the actions in this complaint employed and living in
    Pennsylvania.

2.  Upon information and belief, Defendant North Versailles Township (Hereinafter
    "Defendant NVT") is a municipal corporation duly organized, existing, and
    operating pursuant to the applicable laws of the Commonwealth of Pennsylvania
    at all times relevant to this complaint. Defendant NVT was at all times relevant,
    the employer of the police officers named in this suit and is responsible for hiring,
    training, supervising, discipline, and retention of the police officers employed by
    Defendant NVT including Officers Thomas Nee, Vincent Dicenzo, John Doe #1,
    and James Comunale. Upon information and belief, Defendant NVT is operating
    from 1401 Greensburg Ave, North Versailles, PA 15137.

3.  Upon information and belief, Defendant Vincent Dicenzo (Hereinafter
    "Defendant Vincent") is a police officer, sergeant employed by the North
    Versailles Police Department at all times relevant to the complaint and operates
    from 1401 Greensburg Ave, North Versailles, PA 15137. Defendant Vincent is
    being sued in his official and individual capacities and was at all times relevant to

1

this complaint operating under the color of state law, specifically under the color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania and North Versailles Township.

4. Upon information and belief, Defendant Thomas Nee (Hereinafter "Defendant Nee") is a police officer, patrolman, employed by the North Versailles Police Department at all times relevant to the complaint and operates from 1401 Greensburg Ave, North Versailles, PA 15137. Defendant Nee is being sued in his official and individual capacities and was at all times relevant to this complaint operating under the color of state law, specifically under the color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania and North Versailles Township.

5. Upon information and belief, Defendant James Comunale (Hereinafter "Defendant James") is a police officer, Chief, employed by the North Versailles Police Department at all times relevant to the complaint and operates from 1401 Greensburg Ave, North Versailles, PA 15137. Defendant James is being sued in his official and individual capacities and was at all times relevant to this complaint operating under the color of state law, specifically under the color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania and North Versailles Township.

6. Upon information and belief, Defendant John Doe #1 (Hereinafter "Defendant John") is a police officer, Chief employed by the North Versailles Police Department at all times relevant to the complaint and operates from 1401 Greensburg Ave, North Versailles, PA 15137. Defendant John is being sued in his official and individual capacities and was at all times relevant to this complaint operating under the color of state law, specifically under the color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania and North Versailles Township.

7. Defendant Scottsdale Insurance Company (hereafter Defendant Scottsdale) is an insurance company that provided insurance for the municipality at all times relevant to this complaint and is operating from 88750 North Gainey Center Drive, Scottsdale, AZ 86258. Defendant Scottsdale is a liable party for the claims of the Plaintiff in this case.

## Jurisdiction

8. Jurisdiction of this court arises under 28 USC 1331 pursuant to 42 USC 1983 and 42 USC 1988 and the First, Fourth, Fifth, and Fourteenth amendments to the United States Constitution and under common law of the Commonwealth of Pennsylvania. Jurisdiction is based upon 28 USC 1331 and 1343 and the pendent jurisdiction of this court to entertain claims arising under state law.

9. Venue in this District is proper in that the defendants are employed here, and the acts and transactions occurred here.

## FACTUAL ALLEGATIONS

10. On or about September 21st, 2008, at approximately 1:58 PM, the Plaintiff was driving a 2008 Ford Escape to the Pittsburgh Airport on route 30. Shortly after entering into North Versailles Township (hereafter NVT), the Plaintiff was waived into a parking lot of a vacant building by Defendant Vincent who was standing in the middle of the road.

11. The Plaintiff was driving a vehicle which was legally leased by his employer, Suzlon Wind Energy, which was given to the Plaintiff to use as his own property for the duration of his employment with Suzlon.

12. The vehicle was obtained through Enterprise Leasing Company out of Chicago, and the vehicle was obtained from Tri-Star Somerset, a local Ford Dealership, in Somerset, PA. The vehicle was properly titled, registered, insured, had a temporary registration sticker in the left rear window and a Pennsylvania license

plate on the rear of the vehicle. In addition, the Plaintiff was given a certified MV-1 from the dealer when the Plaintiff signed for and took possession of the vehicle.

13. The Plaintiff at the time had a valid driver's license, was not a felon, fugitive from justice, and did not have any outstanding warrants for his arrest. The Plaintiff at the time was at best in violation of a summary offense, for which the Plaintiff was detained. The Plaintiff was not doing anything suspicious, illegal, or improper. The Plaintiff was not cited for anything other than speeding, nor was the Plaintiff suspected of any criminal activity by any of the Defendants.

14. There were several other cars lined up in front of the Plaintiff, and during the stop, several other cars that pulled in behind the Plaintiff. The Plaintiff was told that he was pulled over for speeding by Defendant Vincent. The Plaintiff presented his driver's license. Defendant Vincent left upon information and belief, to run a computer check on the Plaintiff's license.

15. When registration documents were requested from the Plaintiff, he presented the certified MV-1 form from the dealership that delivered the car to the Plaintiff and the Plaintiff stated that this was the paperwork received from the dealership.

16. The MV-1 contained the name, address, and phone number of the vehicle's owner, Enterprise Leasing Company of Chicago, as well as the name, address, and phone number of the dealer, Tri-Star Somerset, a Ford Dealership in Somerset, Pa. Additionally, the MV-1 contained the insurance information and vehicle identification number (hereafter VIN) for the vehicle in question.

17. Defendant Vincent repeatedly asked for the Plaintiff's employer, which prompted the Plaintiff to ask what that has to do with anything regarding the stop. Defendant Vincent then stated that he was going to impound the vehicle unless he could verify that the Plaintiff was listed on a rental agreement to drive the vehicle in question.

18. The Plaintiff then responded pointing to the MV-1 stating that Defendant Vincent had the number for both the dealership and the owner on the MV-1 and stated that he should call them to verify anything that he is unsure about.

19. Defendant Vincent then falsely stated that the number on the form was for the main Enterprise, not the one in Somerset, and that the Plaintiff was leaving him no choice but to impound the vehicle because the Plaintiff did not have a rental agreement for the vehicle. At no time did Defendant Vincent attempt to contact either the dealer or the owner of the vehicle that were listed on the MV-1, despite the Plaintiff's direction to call either or both of them.

20. The Plaintiff then asked Defendant Vincent if he suspected the Plaintiff of a crime, to which the Defendant replied first stating that he didn't have to and then saying that it didn't matter if he suspected the Plaintiff of a crime. He further stated that in Pennsylvania the Plaintiff had to have a rental agreement with the Plaintiff's name on it to operate the vehicle in question.

21. Defendant Vincent emphatically stated that it is the law in Pennsylvania for drivers to be required to have a rental agreement with their name on it, and that he didn't know what the law was in Texas, but falsely stated that the law in Pennsylvania required the Plaintiff to have a rental agreement with his name on it. He further falsely stated that the law required the rental agreement to be kept in the vehicle at all times when the Plaintiff was driving the vehicle and once again stated falsely that that was the law.

22. The Plaintiff stated that it was a company car, and Defendant Vincent stated that he understood that, but still insisted that the Plaintiff's had to have a rental agreement with the Plaintiff's name on it, and without it according to Pennsylvania law the Plaintiff could not operate the vehicle on Pennsylvania roads.

23. Defendant Vincent stated that the MV-1 had Enterprise Rent a Car listed as the owner, the Plaintiff asked for the MV-1 back, folded the form back to show the Dealer's name, address, and phone number as well as the owner's name, address, and phone number. The Plaintiff then pointed directly at these names and numbers and stated that Defendant Vincent should look carefully at the form.

24. Defendant Vincent identified the dealer's name and information, and then stated that the information on the MV-1 did not show the name and phone number for Enterprise Rent a Car on the MV-1 as the owner.

25. A reasonable police officer would at this point likely conclude that since Enterprise Rent a Car was not listed as the owner on the MV-1, Enterprise Rent a Car were probably not the owner of the vehicle, and that any agreements with Enterprise Rent a Car, presuming that such agreements are consistent with the 4th amendment, would not grant standing for the Defendants to do anything with the Plaintiff's vehicle in question.

26. Defendant Vincent then stated that it wasn't up to him to have the information; it was up to the Plaintiff to have the information as the operator of the vehicle.

27. The Plaintiff then asked to speak with the Defendant's supervisor, to which Defendant Vincent replied that he was the supervisor. The Plaintiff then asked if Defendant Vincent was the chief of police, to which Defendant Vincent conceded that he was not, identified himself as the sergeant and again stated that he was a supervisor. He stated that the chief of police was not working that day.

28. At that point, a second officer, John Doe #1 walked up to the car and flatly stated that the vehicle could be towed and asked who the Plaintiff worked for. Defendant Vincent stated to John Doe #1 that the Plaintiff doesn't even want to tell him the name of the company that the Plaintiff worked for. The Plaintiff then began to ask what the name of the Plaintiff's employer had to do with the traffic stop, and was cut off by Defendant Vincent who again falsely stated that the Plaintiff didn't understand and that the Plaintiff had no right to operate his vehicle without a written rental agreement with his name on it.

29. Defendant John then stated that Enterprise rent a car authorized the North Versailles police to impound their vehicles when there is no rental agreement and there is a person who isn't supposed to be driving the car. The Defendants asked if the Plaintiff understood where they were coming from, but still had to this point failed to create any nexus between the Plaintiff, the alleged offense of speeding, and the Plaintiff's employer.

30. Defendant John then asked the Plaintiff if he wanted them to impound the vehicle, twice, implying that if the Plaintiff did not disclose the name of his employer the Defendant's would impound the Plaintiff's vehicle. Defendant John then stated that he could make a phone call to find out who the Plaintiff worked for, but then

6

asked if there was someone they could contact. The Plaintiff then asked who they
wanted to contact, and Defendant John went back to demanding the Plaintiff's
employer.

31. Defendant Vincent then stated that since the Plaintiff wanted to know the name of
his supervisor, Defendant Vincent now wanted to know the name of the Plaintiff's
supervisor. Out of coercion and the duress of facing the impoundment of the
Plaintiff's vehicle and the harassing nature of the questioning, the Plaintiff stated
the name of his supervisor.

32. The Plaintiff then was asked for his supervisor's number and if he had a cell
phone. The Plaintiff was then ordered to call his supervisor by Defendant Vincent.
The Plaintiff asked what he Defendant Vincent wanted the Plaintiff to tell his
supervisor and ask the Plaintiff's supervisor where the rental agreement was for
the vehicle. Defendant Vincent again stated that if the Plaintiff did not do this, he
would leave Defendant Vincent no choice but to impound the Plaintiff's vehicle.

33. Upon information and belief, this demand for the Plaintiff to contact his
supervisor was an attempt by Defendant Vincent to cause professional harm to the
Plaintiff by involving the Plaintiff's supervisor in a non-criminal matter, non-
business related matter, which was at best a summary offense, which is in no way
related to the Plaintiff's performance with Suzlon Wind Energy or a criminal act
that the Plaintiff was engaging in.

34. The Plaintiff then spoke to his supervisor, and after the Plaintiff ended his call
with his supervisor, Defendant Vincent then knocked on the window and told the
Plaintiff that he was impounding the vehicle. Defendant Vincent claimed that he
attempted to contact Enterprise Rent a Car at the airport, and falsely stated that
the office was closed. He further stated that since he couldn't get any information
stating that the Plaintiff was allowed to drive the vehicle, they would impound the
vehicle.

35. The Plaintiff then stated that he didn't consent to any searches, opened the car
door, put one foot outside the vehicle, and began to secure his belongings in the
vehicle. At this time, the Plaintiff's vehicle companion attempted to exit the
vehicle, but as he was doing so, he was blocked in by Defendant Nee who walked

up very close to the Plaintiff's companion preventing him from exiting the vehicle completely.

36. Defendant Nee immediately began to search the Plaintiff's companion to which the Plaintiff objected stating that the Plaintiff's companion didn't consent to any searches either. Defendant Nee immediately stopped searching the Plaintiff's companion and then threatened the Plaintiff with arrest for verbally objecting to an illegal search.

37. Defendant Nee stated that the Plaintiff was getting ready to talk himself into jail. The Plaintiff asked for what, and Defendant Nee stated disorderly conduct, since the Plaintiff wouldn't exit the vehicle.

38. This exchange between Defendant Nee and the Plaintiff was approximately 30-45 seconds after the Plaintiff was told to exit the vehicle, and the Plaintiff was clearly gathering his personal belongings and was in the process of exiting the vehicle. Furthermore, Defendant Vincent, the supervisor did not object to the Plaintiff gathering his personal belongings, nor did he state that the Plaintiff was being too noisy, threatening, tumultuous, or otherwise disorderly in the manner in which the Plaintiff was gathering his items. Defendant Vincent did not even object to the Plaintiff's objection regarding the illegal search by Defendant Nee and did not stop Defendant Nee from illegally threatening the Plaintiff as any reasonable supervisor would.

39. The Plaintiff then stated that he was getting his stuff if that was ok with Defendant Nee, to which defendant Nee responded yelling for the Plaintiff to get out of the vehicle. The Plaintiff stated that he was getting out. Due to the threat of arrest for legally objecting to a search, and despite multiple requests that the Plaintiff be allowed to retrieve his property out of the vehicle, the Plaintiff was forced to abandon some of his valuable personal property in the vehicle by Defendant Nee. Defendant Vincent was present during this exchange and said nothing.

40. It was not until this point in the encounter, some 30 minutes later that Defendant Vincent returned the Plaintiff's license and gave the Plaintiff a citation. The Plaintiff was not given a receipt for his property that was illegally seized in the

vehicle or for the vehicle that was illegally seized. Defendant Vincent stated that the vehicle was being impounded since the Plaintiff did not have a rental agreement stating that the Plaintiff could be driving the vehicle.

41. The Plaintiff then obtained the names and badge numbers of Defendant's Vincent and Nee. After asking for Defendant Nee's badge number, Defendant Vincent stated that since the Plaintiff did not want to tell Defendant Vincent his employer, that all the information the Plaintiff needed was on the citation and recommended that the Plaintiff call for a ride.

42. The Plaintiff then asked if the vehicle was registered to Suzlon, which was a disclosure of his employer's name again under duress and facing the imminent impoundment of the Plaintiff's vehicle, and Defendant Vincent stated that the vehicle was registered to Enterprise and pointed again to the MV-1 that the Plaintiff provided to the officer, stating that it said Enterprise leasing out of Chicago on the MV-1, and further stated that he independently confirmed and verified the information listed on the Plaintiff's MV-1 as accurate when he ran a computer check on the Plaintiff's vehicle.

43. The total length of the stop was approximately 30 minutes, during which many other vehicles that arrived after the Plaintiff was stopped were ticketed and drove off. The officers involved clearly had sufficient time to process other tickets, and despite this, the Plaintiff was held far longer than what was required to issue a citation for one summary offense. The Defendants clearly had no suspicion of a crime or legitimate reason for the extended detention the Plaintiff.

44. The police officers on the scene acted with a conscious and reckless disregard for the Plaintiff's rights under the 1st, 4th, 5th, and 14th amendments to the US Constitution, specifically the Plaintiff's right to free speech, the Plaintiff's right to be free from unreasonable searches and seizures, and the Plaintiff's right to due process before being deprived of his property.

45. The Defendant Vincent had quickly ascertained that the Plaintiff's vehicle was licensed, titled, and registered, and knew that they Plaintiff was not a wanted person and quite simply had no legitimate reason to excessively detain the Plaintiff beyond what was required to investigate the Plaintiff for speeding and

write a ticket. By extending the detention without cause, Defendant Vincent violated the Plaintiff's rights under the 4th amendment to the US Constitution.

46. Defendant Vincent repeatedly lied about the laws of Pennsylvania requiring the Plaintiff to have a written rental agreement in his name to legally operate the Plaintiff's vehicle and then falsified his report to cover up the lies and the illegal seizure of the Plaintiff's vehicle. Defendant Vincent engaged in a civil conspiracy in violation of the Plaintiff's 4th amendment rights under the US constitution.

47. There is no law in the Commonwealth of Pennsylvania which requires a person driving a vehicle to have a rental agreement in their possession.

48. There is no law in the Commonwealth of Pennsylvania which requires a person driving a vehicle to have a rental agreement in their name.

49. There is no law in the Commonwealth of Pennsylvania which requires vehicles that are rented to be subject to a rental agreement.

50. There is no law in the Commonwealth of Pennsylvania which requires vehicles that are rented to be subject to a rental agreement in the renter's name.

51. There is no law in the Commonwealth of Pennsylvania which requires a person driving a vehicle to prove that they have authorization to drive the vehicle.

52. There is no law in the Commonwealth of Pennsylvania authorizing a police officer to impound a vehicle if said officer is merely unsure if the person driving the vehicle has authorization to be in the vehicle.

53. Defendant Vincent extended his lies and misrepresentations about the incident to his police report regarding the incident. On the citation to the Plaintiff, Defendant Vincent wrote the correct information regarding the vehicle's ownership stating that the vehicle was owned by Enterprise leasing out of Chicago.

54. Later that same day, Defendant Vincent falsely stated on his police report that the Plaintiff's vehicle was owned by Enterprise Rent a Car in Pittsburgh and included the address of 4489 Campbell's Run Road, Pittsburgh, PA. In this report, Defendant Vincent fails to state any crime or suspicion of a crime that he felt the Plaintiff was involved in.

55. Defendant Vincent correctly stated in his report and on the ticket every other aspect of the incident to include the Plaintiff's driver's license number, address, the VIN of the vehicle, make, and model.

56. Defendant Vincent clearly knew that he was impounding a vehicle improperly at the time of the incident, since he repeatedly stated that Enterprise Leasing owned the vehicle and confirmed that nowhere on the MV-1 did it state that Enterprise Rent a Car was the owner of the vehicle, and he listed Enterprise Leasing Company as the owner of the vehicle on the citation.

57. All of Defendant Vincent's representations regarding a legal requirement to have a rental agreement were false and indicates one of two things: First, Defendant Vincent was not properly trained on legally impounding vehicles, detentions, searches, seizures, and is completely incompetent and unfit to perform as a police officer, despite his tenure of more than 20 years as a police officer and his position as a supervisor and sergeant with the police force. Alternatively, Defendant Vincent knew the proper procedures and deliberately and knowingly chose to lie to the Plaintiff, ignore the proper procedures, illegally impound the Plaintiff's vehicle, and then falsify his report regarding the incident in an attempt to cover up his illegal activity.

58. Either way, a reasonable police officer would not have engaged in the actions of Defendant Vincent and would be expected to have learned the proper procedures of impounding a vehicle sometime in a 20 year career as a police officer and certainly before promotion to the sergeant rank and supervisor position.

59. The Plaintiff was not charged with any crime, but was detained excessively and defacto arrested without cause and in violation of the Plaintiff's 4th amendment rights by the Defendant police officers.

60. The Plaintiff was not taken in a custodial arrest to the police station; however, due to the length of the overall stop, the extended detention was a de-facto arrest. The Defendant's stop was prolonged in nature and should have terminated far sooner than the 30 minutes that the Plaintiff was detained. No further evidence of speeding was to be found by the Plaintiff naming his employer or in the pockets of the Plaintiff's companion. The Plaintiff was falsely arrested by Defendant

Vincent as the Plaintiff was not suspected of a crime, and the Plaintiff was restricted from leaving as Defendant Vincent held and continued to hold the Plaintiff's driver's license through the duration of the entire encounter and no reasonable person would have concluded that they were free to leave given the circumstances.

61. The Plaintiff was not cited for anything other than the summary offense of speeding, although Defendant Vincent did write "no rental agreement" on the citation.

62. The Plaintiff was not even suspected of a crime, pursuant to the statements of Defendant Vincent. Defendant Vincent struggled to even respond to the question and finally stammering that it didn't matter if the Plaintiff was suspected of a crime. This is of course contrary what multiple Supreme Court rulings, which a reasonable and trained officer would be aware of. Defendant Vincent clearly did not have reasonable suspicion of a crime, required for a Terry stop, much less the prolonged and excessive detainment of the Plaintiff.

63. Defendant Nee conducted an illegal search of the Plaintiff's companion and violated the Plaintiff's right to free speech under the First Amendment to the Constitution which guarantees the right to protest. Defendant Nee stated that the Plaintiff was getting ready to talk his way into jail despite doing nothing more than objecting in a reasonable tone to an illegal search.

64. Defendant Nee then reversed course and tried to assert that the Plaintiff was being disorderly because the Plaintiff was gathering his personal items in the vehicle. Despite a reasonable request to be allowed to gather his personal items, Defendant Nee ordered the Plaintiff out of the vehicle and forced the Plaintiff to abandon his personal items in the vehicle.

65. No reasonable officer could believe that objecting to an illegal search would rise to the standard of disorderly conduct or obscene language.

66. Defendant Nee's conduct constituted a second illegal seizure of the Plaintiff's property in violation of the Fourth and Fourteenth Amendments to the United States Constitution by ordering the Plaintiff out of the vehicle and refusing to allow the Plaintiff to secure his property. Defendant Nee also violated the

Plaintiff's first amendment right to free speech by threatening the Plaintiff with arrest for objecting to an illegal search.

67. No reasonable officer could conclude that sitting quietly in a vehicle gathering the Plaintiff's personal belongings for 30–45 seconds was fighting, threatening, or tumultuous behavior. Defendant Nee was attempting to threaten and punish the Plaintiff for objecting to an illegal search and silence constitutionally protected speech.

68. Pursuant to 18 PA Cons Stat 5503, which defines disorderly conduct, at no time was the Plaintiff engaging in fighting, threatening, or tumultuous behavior, making an unreasonable noise, making an obscene gesture or obscene language, or creating a physically offensive or hazardous condition.

69. Defendant Vincent then falsified the ownership information in his report to give himself a cover story and pretext of a legitimate impoundment pursuant to a contractual agreement with Enterprise Rent a Car that he claims his police department has. If he could establish falsely that the vehicle was owned by Enterprise Rent a Car, he could have the appearance of propriety in his actions.

70. The ruse works well until both the citation and the incident report are viewed together, which any reasonable supervising officer would do while reviewing a report and certainly before signing it. It is emblematic of the gross failures to train and supervise the police officers of North Versailles to note that Defendant James was at home while his officers were busy violating the civil rights of a citizen and then further compounded by Defendant James signing off on a falsified report.

71. All Defendant James would have had to do to notice the discrepancy was to review a 1 page citation as logic would dictate in conjunction with the report that refers to the citation, but due to the inadequate and sloppy police procedures in place with Defendant James' department, no such review happened.

72. Defendant James either knowingly viewed the information and engaged in a cover-up or simply failed to adequately supervise his subordinates and properly review their reports, actions, and supporting documentation. Finally, Defendant James refused to provide a copy of the incident report to the Plaintiff upon

13

request, thus engaging in a civil conspiracy to facilitate the cover-up with Defendant Vincent.

73. The cover-up works like this: If the Plaintiff contested the ticket in court, Defendant Vincent could provide the ticket with the correct ownership information on it, but if questioned by Defendant James, Defendant Vincent could present the falsified report to justify his position that he was impounding a vehicle owned by Enterprise Rent a Car, pursuant to a contractual agreement. Since Defendant James was either actively involved in the conspiracy to violate the Plaintiff's rights or ineptly supervising his subordinates which would facilitate them to engage in civil rights violations, Defendant James was at best deliberately indifferent to the actions taking place in his own police department and at worst actively taking part in the illegal activity.

74. Initially, Defendant Vincent and Defendant James claimed that the vehicle was owned at the time, he was relying on a purported agreement with Enterprise Rent a Car, which based on his statements, was the sole point of authorization to impound vehicles to the North Versailles Police Department.

75. Defendant Vincent, however, independently verified that the vehicle was not owned by Enterprise Rent a Car through his computer check, and the MV-1 provided by the Plaintiff, and he wrote the correct name of the owner on the citation and stated it to the Plaintiff. No reasonable officer would engage in deceptive conduct such as falsifying a police report to justify their illegal actions.

76. Defendant Vincent also refused to call the dealership and the owner that were listed on the MV-1, despite the Plaintiff specifically pointing out this information and directing Defendant Vincent to call them. Instead of calling the actual owner of the vehicle as listed on the MV-1, which Defendant Vincent independently verified, Defendant Vincent claimed to have called Enterprise Rent a Car which he knew and had already verified did not own the vehicle in question. No reasonable officer would refuse to call the listed owner of a vehicle if he genuinely wanted to find out if a person driving the vehicle had authorization to do so.

77. It is incompatible with the 4th amendment to continue to detain an individual to determine if they have authorization to drive a vehicle absent any indication that the person should not be driving the vehicle. The Plaintiff is under no legal requirement to provide a receipt for any piece of property in the Plaintiff's possession just because a police officer demands it. Defendant Vincent took these actions because he saw a young black male in a nice new vehicle and didn't believe that the Plaintiff belonged in the vehicle just based on those circumstances alone.

78. Furthermore, since Defendant Vincent admittedly did not even attempt to contact the owner of the vehicle or the dealer that delivered the vehicle to the Plaintiff, and did not even contact the pretextual owner of the vehicle, Enterprise Rent a Car, Defendant Vincent had no grounds to impound the Plaintiff's vehicle at all. There is no law in the Commonwealth of Pennsylvania which authorizes a police officer to impound a vehicle simply because the officer is not sure if the person driving has authorization to do so from the vehicle's owner, particularly when the vehicle's owner purportedly cannot be reached.

79. Furthermore, Defendant Vincent was lying when he stated that the Enterprise Airport office was closed at approximately 1:30 in the afternoon. The hours for the office at the Pittsburgh Airport are from 0630 until 2359 on Sundays.

80. Defendant Vincent prolonged and extended the simple stop for a summary offense despite having no suspicion of a crime on the part of the Plaintiff was illegal and constituted an arrest.

81. Police Chief James Comunale then certified Defendant Vincent's lies by signing the police report, which illustrates both the lack of supervision and training in the police department as well as a civil conspiracy to cover-up the truth in this case.

82. Defendant Vincent lied again in his report stating that the Plaintiff stated that his vehicle was a rental from Enterprise. At no time did the Plaintiff make such a statement.

83. Conspicuously absent from Defendant Vincent's report is any mention of the MV-1 that the Plaintiff presented which indicated the name, address, and phone

number of the dealer and owner of the vehicle as well as the threat of arrest by Defendant Nee.

84. Defendant Vincent lied in this report, regarding the address and ownership information so he could engage in a civil conspiracy and cover-up to hide his illegal actions and those of his fellow officers from the scant supervision and scrutiny of his supervisor, Defendant James.

85. Defendants Vincent, Nee, and John merely wanted to harass the Plaintiff by impounding his vehicle, since the Plaintiff would not disclose the name of his employer willingly and because the Plaintiff was a young black male driving a nice new vehicle. Defendant Vincent knew the Plaintiff lived in Texas, thus he believed that he could get away with these actions, since the Plaintiff lived so far away. Defendant Vincent believed the Plaintiff would be unlikely to contest the ticket or protest the illegal actions by Defendant Vincent and thus he could get away with the illegal detention, impoundment and threats of arrest.

86. By impounding the Plaintiff's vehicle, Defendant Vincent violated the Plaintiff's rights under the 4th and 14th amendments to the constitution.

87. By demanding the Plaintiff's supervisor's and employer's name and forcing the Plaintiff to call his supervisor under the threat of impoundment, Defendant Vincent violated the Plaintiff's rights under the 5th amendment to the constitution.

88. By demanding the Plaintiff name his employer under the threat of impoundment, Defendant John violated the Plaintiff's rights under the 5th amendment to the constitution.

89. By threatening the Plaintiff with arrest for objecting to a search, Defendant Nee violated the Plaintiff's rights under the 1st amendment.

90. By forcing the Plaintiff to abandon his personal items in the vehicle under the threat of arrest, Defendant Nee violated the Plaintiff's rights under the 4th and 14th amendments to the constitution.

91. Defendants Nee, John, Vincent, and James violated rights that are clearly established by the courts and the US constitution and engaged in actions that no reasonable officer would do.

92. By reviewing and signing the incident report, Defendant James engaged in a civil conspiracy to deprive the Plaintiff of his rights under the 1st, 4th, 5th, and 14th amendments along with Defendants Nee, Vincent, and John.

93. Defendant NVT has a policy, procedure, and custom of inadequately training its police officers including Defendant Nee, James, Vincent, and John including, but not limited to arrests, detentions, searches, seizures, vehicle impounding, protests and objections by a citizen.

94. Defendant NVT has a policy, procedure, and custom of inadequately supervising its police officers including Defendant Nee, James, Vincent, and John including but not limited to arrests, detentions, searches, seizures, vehicle impounding, protests and objections by a citizen.

95. Any policies in place at NVT during the relevant time period were inadequate and constitute deliberate indifference to the rights of citizens of the United States.

96. By reviewing and signing the incident report and, Defendant James failed to properly supervise and discipline his subordinates in his official and individual position as the police chief. Defendant James actions constitute deliberate indifference to the rights of citizens of the United States.

97. As a result of the Defendant's action, the Plaintiff missed his flight, was forced to rent a hotel room for the night, had to pay additional money for a taxi to travel to the airport and had to pay for the shipping of the Plaintiff's items that were left in the vehicle, suffered actual damages, mental anguish, frustration, anger, loss of sleep, and is entitled to damages from the Defendants.

## CAUSES OF ACTION:
## COUNT I
## (42 USC 1983)
## Civil Conspiracy

98. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

99. The foregoing acts, errors, and omissions of Defendants John, Nee, Vincent, and James constitute a civil conspiracy to deprive the Plaintiff of his rights under the 1st, 4th, 5th, and 14th amendments to the constitution.

100. Each Defendant had actual knowledge of the conspiracy to deprive the Plaintiff of his rights under the law and took action to further the conspiracy to deprive the Plaintiff of his rights. Each officer had the opportunity and responsibility to intervene to stop the Plaintiff's rights from being violated, yet each failed to act.

101. As a result of each and every one of the Defendants' willful or knowing violations of the Plaintiff's rights under the US Constitution and amendments, Plaintiff Cunningham suffered financial harm, actual damages, and other damages, and have deprived the Plaintiff of his rights under the US Constitution and amendments to it.

## COUNT II
### (42 USC 1983)
### Deliberate Indifference and Failure to train/supervise

102. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

103. The township of North Versailles has a responsibility to discipline, supervise, train, and hire its police officers in various forms of law enforcement to include searches, seizures, arrests, civil rights, responding to protests and objections, ownership, possession, and impounding vehicles, and other aspects of law enforcement.

104. Defendant NVT failed to train the Defendants James, Nee, Vincent, and John and due to the deliberate indifference of the township to the constitutional

18

rights of citizens, the Plaintiff's rights under the 1st, 4th, 5th, and 14th amendments were violated by these individuals.

105.    As a result of the township's willful or knowing violations of the Plaintiff's rights, Plaintiff Cunningham suffered actual damages, for which he is entitled to recover

## COUNT II
## (42 USC 1983)
### Deliberate Indifference and Failure to train/supervise

106.    Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

107.    The Police chief, Defendant James has a responsibility to discipline, supervise, train, and hire its police officers in various forms of law enforcement to include searches, seizures, arrests, civil rights, responding to protests and objections, ownership, possession, and impounding vehicles, and other aspects of law enforcement.

108.    Defendant James failed to train the Defendants James, Nee, Vincent, and John and due to the deliberate indifference of the township to the constitutional rights of citizens, the Plaintiff's rights under the 1st, 4th, 5th, and 14th amendments were violated by these individuals.

109.    As a result of Defendant James willful or knowing violations of the Plaintiff's rights, Plaintiff Cunningham suffered actual damages, for which he is entitled to recover

## COUNT IV
## (42 USC 1983)
### Violations of the 1st, 4th, 5th, and 14th amendments to the US Constitution

110.    Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

111.    The foregoing acts, errors, and omissions of Defendants John, Nee, Vincent, and James constitute multiple violations of the Plaintiff's rights under the 1st, 4th, 5th, and 14th amendments to the constitution.

112.    Defendant Nee violated the Plaintiff's rights under the 1st, 4th, and 14th amendments. Defendant Vincent violated the Plaintiff's rights under the 4th, 5th, and 14th amendments. Defendant John violated the Plaintiff's rights under the 5th amendment. Defendant James violated the Plaintiff's rights under the 1st, 4th, 5th, and 14th amendments by failing to train, supervise, and discipline his officers.

113.    As a result of each and every one of the Defendants' willful or knowing violations of the Plaintiff's rights under the US Constitution and amendments, Plaintiff Cunningham suffered financial harm, actual damages, and other damages, and have deprived the Plaintiff of his rights under the US Constitution and amendments to it.

## PRAYER FOR DAMAGES AND RELIEFS

A.  WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against Defendants Vincent, Defendant NVT, Defendant James, Defendant Nee, and John Doe 1 for the following:

B.  Declaratory judgment that each and every defendant violated the Plaintiff's rights under the 1st, 4th, 5th, and 14th amendments to the United States Constitution; and

C.  Actual damages in the amount of $150,000 and

D.  An injunction preventing the Defendants from engaging in the "smooth operator" traffic program for 18 months, and

E. An injunction divesting the city of all proceeds from speeding tickets from the "smooth operator" traffic program from the past 12 months, and

F. An injunction requiring additional training for all the officers involved to prevent such illegal actions as described above including at a minimum attendance at a accredited college level constitutional law course, and

G. Punitive damages for all claims in the amount of $100,000.

H. Pre-judgment interests and Attorney's fees, pursuant to 42 USC 1988 for bringing this action; and

I. Costs of bringing this action; and

J. Any further relief as the Court may deem just and proper.

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

Craig Cunningham

PO Box 820022

Dallas, Tx 75231

206-312-8648
September 22, 2009